**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 14-2192**

In Re: OUTSIDEWALL TIRE LITIGATION

--------------------------------

GILBERT LLP,

             Appellant,

      v.

TIRE ENGINEERING AND DISTRIBUTION, LLC, d/b/a Alpha Tyre
Systems, d/b/a Alpha Mining Systems, a Florida Limited
Liability Corporation; JORDAN FISHMAN, an individual;
BEARCAT TIRE ARL, LLC, d/b/a Alpha Tire Systems, d/b/a
Alpha Mining Systems, a Florida Limited Liability Company;
BCATCO A.R.L., INCORPORATED, a Jersey Channels Islands
Corporation,

             Plaintiffs – Appellees,

      and

SHANDONG LINGLONG RUBBER COMPANY, LTD., a foreign company;
SHANDONG LINGLONG TIRE COMPANY, LTD., f/k/a Zhaoyuan Leo
Rubber Products Company, Ltd., a foreign company; AL
DOBOWI, LTD., a foreign limited liability company; AL
DOBOWI TYRE COMPANY, LLC, a foreign limited liability
company; AL DOBOWI GROUP, a foreign corporation; TYREX
INTERNATIONAL, LTD., a foreign limited liability company
based in Dubai; TYREX INTERNATIONAL RUBBER COMPANY, LTD., a
foreign corporation; QINGDAO TYREX TRADING COMPANY, LTD., a
foreign corporation; SURENDER S. KANDHARI, an individual,

             Defendants.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  T. S. Ellis, III, Senior District Judge.  (1:09-cv-01217-TSE-IDD)

Argued:  December 8, 2015                Decided:  January 11, 2016

Before GREGORY, DUNCAN, and FLOYD, Circuit Judges.

Vacated and remanded by unpublished per curiam opinion.

**ARGUED**: Richard Daniel Shore, GILBERT LLP, Washington, D.C., for Appellant.  William Edgar Copley, III, WEISBROD MATTEIS & COPLEY PLLC, Washington, D.C., for Appellees.  **ON BRIEF**: James C. Liddell, GILBERT LLP, Washington, D.C., for Appellant. August J. Matteis, Jr., WEISBROD MATTEIS & COPLEY PLLC, Washington, D.C., for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This appeal concerns a fee dispute between a law firm, Gilbert LLP ("Gilbert" or "the Firm"), and its former client, Alpha.[1]  Gilbert represented Alpha under a contingency agreement. After Alpha obtained a $26 million judgment in the underlying suit, the company terminated Gilbert and retained new counsel to defend the judgment on appeal and initiate recovery actions. Gilbert asserted an attorney's lien against any future recovery on the judgment.  Gilbert now appeals the district court's order determining the value of that lien.  For the reasons that follow, we vacate the judgment of the district court and remand for further proceedings consistent with this opinion.

## I.

The background of the underlying civil action is set forth in our previous opinion addressing the jury verdict in that suit.  See Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co., Ltd., 682 F.3d 292 (4th Cir. 2012).  The following facts are relevant to this appeal, which concerns only the fee dispute arising from Gilbert's lien.

---

[1]  "Alpha" collectively refers to Jordan Fishman; Tire Engineering and Distribution, LLC; Bearcat Tire A.R.L., LLC; and Bcatco A.R.L., Inc.  The three entities are owned by Fishman and do business under the names "Alpha Tire Systems" and "Alpha Mining Systems."

3

In 2009, Jordan Fishman, Alpha's founder and chief executive officer, retained Gilbert to represent the company in connection with the appropriation of its designs and trade secrets by former employees and other third parties. In August 2009, Fishman signed an engagement letter with Gilbert that memorialized the arrangement between Alpha and the firm. The "Fees and Expenses" section of the letter, composed of two subsections, details the compensation arrangement.

The first subsection, titled "Costs and Expenses," provides that Gilbert will advance "all costs and expenses related to this matter." J.A.[2] at 358. The agreement states that "[i]f Alpha prevails in this matter and receives payment" from a judgment or settlement, Alpha will "reimburse the Firm for all costs and expenses" that Gilbert advanced. Id. The letter specifies that

> [s]uch costs and expenses may include photocopying charges, courier and overnight delivery charges, travel expenses (including mileage, parking, airfare, lodging, meals, translation services, security, and ground transportation), costs incurred in computerized research, litigation support services, filing fees, witness fees, and the costs of any consultants, experts, investigators, court reporters, or other third parties who [Gilbert] deem[s] necessary to successfully pursue Alpha's claim.

---

[2] Citations to the "J.A." refer to the Joint Appendix the parties filed in this appeal.

4

Id. The second subsection, titled "Attorneys' Fees," sets forth the following contingency arrangement:

> If Alpha recovers money through judgment, settlement or other means as the result of any work done by [Gilbert] on this matter, then, in addition to reimbursing the Firm for costs and expenses as described above, Alpha will pay the Firm a contingency fee equal to forty percent (40%) of the gross amount of any sum that Alpha recovers (calculated prior to the deduction of any costs and expenses enumerated above).

Id.

The engagement letter contains a separate termination provision. Under that provision, "[i]n the event that Alpha elects to terminate our representation, [Gilbert] will be entitled to a fee based upon the hours expended by the Firm on this representation at the hourly rates normally charged by the involved personnel for the type of work rendered." Id. In the alternative, the letter permits Gilbert to seek its contingency fee if Alpha recovers within twelve months of terminating Gilbert. The letter further provides that "[i]n any event, Alpha will reimburse the Firm for all out-of-pocket expenses and disbursements incurred by the Firm" in connection with Gilbert's representation of Alpha. Id.

Gilbert represented Alpha from 2009 to 2011. During that time, Gilbert initiated suit on Alpha's behalf and ultimately won a jury award of $26 million. After winning the case in the district court, the Gilbert attorneys representing Alpha left

the Firm and formed their own practice. Alpha terminated Gilbert and hired the new firm to defend the judgment on appeal and initiate judgment recovery actions. Shortly thereafter, Gilbert asserted an attorney's lien in the district court against any future recovery, pursuant to Va. Code § 54.1-3932. Represented by the new firm, Alpha obtained over $15.5 million in recovery on the judgment, largely by negotiating settlements.

Alpha filed a motion to determine the value of Gilbert's lien. Gilbert sought to recover its expenses, but it did not seek its contingency fee, conceding that the provision authorizing it was not enforceable under Virginia law, and therefore the Firm could only recover the value of its services in quantum meruit. However, Gilbert sought to recover more than just its hourly fees, arguing that its significant contribution towards Alpha's success in the litigation merited an increased award of attorney's fees. Gilbert therefore sought $4.5 million in hourly fees, $1.8 million in costs, and a portion of the contingency fee. The district court rejected Gilbert's arguments and ruled that Gilbert was entitled to recover $1,237,720.00 in attorney's fees and $720,621.67 in costs.

II.

Gilbert raises two arguments on appeal. The Firm first contends that the district court failed to properly consider the

6

factors for quantum meruit fee awards set forth by the Supreme Court of Virginia in County of Campbell v. Howard, 112 S.E. 876 (Va. 1922). Second, Gilbert argues that the district court erroneously applied a quantum meruit analysis to the cost issue instead of enforcing the cost provision of the engagement letter. We consider each argument in turn, reviewing de novo the principles of state law upon which the district court based its valuation of Gilbert's lien. See Food Lion, Inc. v. Capital Cities/ABC, Inc., 194 F.3d 505, 512 (4th Cir. 1999) (citing Salve Regina College v. Russell, 499 U.S. 225, 231 (1991)).

A.

The parties agree that Virginia law governs Gilbert's recovery from its former client, and that Virginia law prohibits Gilbert from enforcing its contingency fee agreement with Alpha. Under Virginia law, "when, as here, an attorney employed under a contingent fee contract is discharged without just cause and the client employs another attorney who effects a recovery, the discharged attorney is entitled to a fee based upon quantum meruit" for work performed before the attorney was terminated. Heinzman v. Fine, Fine, Legum & Fine, 234 S.E.2d 282, 285 (Va. 1977)(footnote omitted).

In County of Campbell v. Howard, the Supreme Court of Virginia set forth the factors a court must consider when

awarding attorney's fees in quantum meruit. 112 S.E. at 885. Those factors are

> the amount and character of the services rendered, the responsibility imposed; the labor, time and trouble involved; the character and importance of the matter in which the services are rendered; the amount of the money or the value of the property to be affected; the professional skill and experience called for; the character and standing in their profession of the attorneys; and whether or not the fee is absolute or contingent, it being a recognized rule that an attorney may properly charge a much larger fee where it is to be contingent than where it is not so. The result secured by the services of the attorney may likewise be considered; but merely as bearing upon the consideration of the efficiency with which they were rendered, and, in that way, upon their value on a quantum meruit, not from the standpoint of their value to the client.

Id. The Supreme Court of Virginia has twice reaffirmed that County of Campbell governs an assessment of fees in quantum meruit. See Hughes v. Cole, 465 S.E.2d 820, 834 (Va. 1996); Heinzman, 234 S.E.2d at 286 n.4.

Here, the district court correctly noted that quantum meruit principles governed the fee award, but it failed to analyze the County of Campbell factors. Although the district court correctly cited Hughes, Heinzman, and County of Campbell as the governing authorities, the district court employed a "lodestar" analysis[3] to determine an appropriate fee award.

---

[3] A court calculates a "lodestar" figure by "multiplying the number of reasonable hours expended times a reasonable rate." Jones v. Southpeak Interactive Corp., 777 F.3d 658, 675-76 (4th
(Continued)

8

After reducing both the hours and rates Gilbert requested (based upon inflated and vague billing), the district court awarded the lodestar figure and stated in a footnote: "No further adjustment, upward or downward, is warranted by application of the County of Campbell factors."  J.A. at 459 n.23.  The district court did not explain this conclusion, and the opinion neither lists the relevant factors nor expressly analyzes them. As far as we can tell, the district court calculated a lodestar figure and ended its analysis there.

Because the district court did not explain its reasoning with respect to the County of Campbell factors, it is impossible for us to review the district court's analysis for an abuse of discretion.  This is troubling, given that the particular circumstances of this case--where Gilbert represented Alpha from initial pleadings to a $26 million judgment--suggest that the contingent nature of the fee arrangement should have been a significant factor in a quantum meruit analysis.  See Lowe v. Mid-Atlantic Coca-Cola Bottling Co., 33 Va. Cir. 361, 363 (Va. Cir. Ct. 1994) ("Every hour spent in performance of a contingent fee contract is an hour spent against the risk of no

_____

Cir. 2015)(quoting McAfee v. Boczar, 738 F.3d 81, 88 (4th Cir. 2013)).  A lodestar analysis is the first in a three-step process for calculating attorney's fees under federal law.  Id.

9

compensation at all. When, without fault of the attorney, it becomes necessary to evaluate a quantum meruit charge for such time, that a charge 'much larger' than normal may properly be charged is a 'recognized rule.'" (quoting Cty. of Campbell, 112 S.E. at 885)). The district court also failed to consider the "result secured" in this case: a $26 million judgment. Although a district court need not recite and make express findings as to each and every factor, its failure here to analyze relevant factors in detail sufficient to allow for meaningful appellate review constitutes legal error.

Accordingly, we vacate the district court's award of attorney's fees and remand with instructions to consider the County of Campbell factors.[4]

---

[4] Gilbert asks us to instruct the district court, on remand, to award Gilbert a prorated share of its contingency fee. It is well established that a district court enjoys broad discretion to award attorney's fees based on its first-hand knowledge of the case. See Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 243 (4th Cir. 2009); see also Hughes, 465 S.E.2d at 834 (noting that an award of fees in quantum meruit is a determination committed to "the sound judicial discretion of the trial judge"). Thus, we decline to issue instructions for the district court's exercise of its broad discretion.

Gilbert also contends that the district court erred when it awarded fees to Gilbert, a Washington, D.C., law firm, based on the lower prevailing rates in the Eastern District of Virginia. We do not decide the propriety of the rates requested by Gilbert or those awarded by the district court. We do, however, remind the district court that this is not a fee-shifting case (like those cited in its opinion) and that under County of Campbell it must consider the 'skill and experience called for' and the (Continued)

10

We now turn to Gilbert's argument that the district court was required to enforce the cost provision of the agreement and failed to do so. Upon review of the engagement letter, we conclude that the district court overlooked the cost provision, and failed to consider whether that provision is severable from the contingency fee arrangement.

It appears that the district court assumed, after correctly determining that the contingency fee provision was unenforceable under Heinzman, that the entire engagement letter was unenforceable. Based on that assumption, the district court applied precedent from fee-shifting cases and analyzed, under a quantum-meruit theory, whether Gilbert's expenditures were "reasonable." This was erroneous, because there is no precedent that extends Heinzman, which addresses attorney's fees, to cost agreements. In other words, the rule of Heinzman is limited to attorney's fees, and there was no basis for concluding that the entire engagement agreement automatically became void when Alpha terminated Gilbert. To the contrary, courts have held that

---

attorneys' 'standing in their profession.' 112 S.E. at 885. These factors suggest that when a litigant selects a firm with higher rates, that firm may be entitled to a larger fee in quantum meruit (depending, of course, on the balance of all the factors).

other provisions of an engagement agreement may be enforceable, notwithstanding Virginia's rules regarding the unenforceability of a contingency provision by a terminated attorney. See, e.g., Morris Law Office, P.C. v. Tatum, 388 F. Supp. 2d 689, 693 n.2 (W.D. Va. 2005) ("Note that the court only finds that [the fee provision] of the contract is void, but agrees . . . that other separate provisions of the contract are enforceable. . . . Therefore, [the law firm] is still entitled to recover its expenses under paragraph 3.0 of the contract.").

Here, Alpha and Gilbert entered into an agreement regarding costs. The engagement letter provides that "[i]n the event that Alpha elects to terminate our representation, . . . . Alpha will reimburse the Firm for all out-of-pocket expenses and disbursements incurred by the Firm . . . ." J.A. at 358. As we have noted, the agreement lists recoverable expenses with particular detail. The district court did not analyze Gilbert's expenditures in the context of this provision, and instead employed a "reasonableness" inquiry to award costs. In a key example, the district court held that Gilbert's request for expert fees and overhead costs was unreasonable, stating: "[i]t is well-settled that attorneys 'are clearly not entitled to reimbursement of expenses where the request is for an amount which is excessive or otherwise noncompensable.' Absent a specific agreement to the contrary, overhead expenses are

typically neither taxable nor recoverable costs." J.A. at 460-61 (internal citation omitted). But such a "specific agreement," under which Alpha expressly agreed to reimburse Gilbert for expert fees and several types of overhead costs, did exist. The district court did not analyze whether the cost provision was enforceable, and its failure to consider the cost provision was reversible error.

In sum, Gilbert's entitlement to costs and expenses is governed by a contract, and the district court's analysis, which overlooked the terms of the agreement, was erroneous. Therefore, we vacate the award of costs and remand with instructions to recalculate the cost award after considering the "costs and expenses" and "termination" provisions of the engagement agreement.

### III.

For the foregoing reasons, the judgment of the district court is

VACATED AND REMANDED.